Number 21-3185 Mervilus v. Union County et al. Mr. Chaney and Mr. Cheney. Good morning, your honors. David Cheney for the plaintiff appellant, Emanuel Mervilus. I ask to reserve three minutes for rebuttal, please. Disputed questions of fact regarding the polygraph examiner, John Kaminskis' state of mind when he created the false polygraph evidence in this case, whether it was knowing, intentional, reckless, deliberately indifferent, have been at the heart of our briefing and I'm sure will be much discussed today. He's no longer with us, so we just look at the record. That's correct. But before we delve into that, I'd like to highlight a couple of issues that I think received a bit less attention in the briefing. The first is what exactly was false about the polygraph report? Now we focused and the district court focused on the polygraph report concluding that Mr. Mervilus was deceptive when he answered those questions, when in fact he was not. But that's not the only false statement in the polygraph report. The polygraph report also states that Mr. Kaminskis used, quote, validated and accepted, end quote, methods to conduct his polygraph examination. And in light of the fact that Kaminskis himself testified that he had read literature stating that polygraph science was neither valid nor reliable, we have direct evidence that he knew that what he was saying in that polygraph report was not true. Also, evidence goes both ways on this. Kaminskis declined, says he declined to follow some of the Arthur Method's wacky teachings, I guess. So it sounds like he picked and chose which ones to follow and which ones not. And I'm not sure which they are. I mean, just on that one, that isn't enough to get you to say there's bad faith. He adopted some things. He didn't adopt other things in connection with a method that has now been quite significantly discredited. But how does that show bad faith? Well, we've talked a lot about labels, the Arthur Method, the Utah Method. But in fact, we're really talking about the Kaminskis Method. As Your Honor said, Mr. Kaminskis took, accepted some of the teachings that he received at the Arthur School and unilaterally decided, when they were a bit too out there, that he would reject others. Doesn't that go to his bad faith, though? He threw out the parts that he thought were ridiculous, kept the parts that he arguably, in good faith, thought were useful, and proceeded with what you say was essentially his own method. So he might have been mistaken, but I don't know how is bad faith? Well, I think, first of all, the most powerful evidence of bad faith is his testimony about knowing that polygraph science was not valid or reliable, right? And I would note there that that testimony came about not when he was asked about the article, but in fact, he was asked, have you ever read anything, any literature about the validity and reliability of polygraph evidence? And he says, yes, I read this one article in the National Journal of Sciences that says it's not. The National Academy of Sciences report. Did Kaminskis believe the report's conclusion? Did he believe it could be true? I'm not sure, based on what he's testified to so far. Well, that's the central issue here. What did he believe? What did he know? Because so far, there won't be anything further. Well, fortunately, we have videotaped deposition testimony from him, but we're going to have to rely on his deposition testimony and his report and the documents that he produced in Discovery. But Your Honor is asking the central question. What did he know? What did he believe? And those are questions that cannot be resolved on summary judgment. And I have to emphasize here that not only did the appellees not address whatsoever the case law on this. To me, that's your best argument. Yes, Your Honor. The district court did not address it either. The district court cited not a single case where summary judgment was granted in an evidence fabrication case based on the mens rea of the defendant, based on the lack of knowledge or the lack of bad faith. There's no authority that the district court relied on for reaching that conclusion here. And I submit that this certainly is not the case where it is so clear that he acted in good faith that the court should decide that as a matter of law. These are questions for a jury. And largely, this is this case comes down to a battle of the experts. Is fabrication or mishandling of inculpatory evidence a procedural due process claim or a substantive due process claim? I'm not sure that the court has defined that. I have always assumed that it's a procedural due process claim. So that's that's how we've treated it. The second point that I think received a bit less attention than perhaps was should have is the county's policy of complete indifference to how polygraph examinations were conducted. Before we go before, let's come back to Mr. Comiscus and wrestle that one to the ground a bit. If we agree that he violated Mr. Marvelous's constitutional rights, why is Comiscus not protected by qualified immunity? Well, I think the first answer to your question is Halsey v. Pfeiffer, which answered that question clearly and decisively that the right at issue here, which is the right not to be detained, prosecuted or convicted based on false evidence, was clearly established even in the 1980s that Halsey was as far back as 85. The fabrication of evidence is so obvious. Yes, and I have to constitutional violation. But the point is here you still have to get the evidence in that that proves there was a fabrication of evidence as opposed to incompetence or or possibly that someone acted so recklessly that it could be considered to be a fabrication of evidence or something that should survive summary judgment. Frankly, I think when this case, if this case should go to trial, that that that will be the issue. Was it simply negligent? Was it reckless? Or did he knowingly create a false polygraph report? And these are classic jury trial questions. So if I may continue to the policy of complete indifference, it's notable. Does that mean we shouldn't be deciding the qualified immunity issue, then, because it requires further? Well, I guess not factual development, but someone has to consider these facts and make a decision. Well, the question of qualified immunity at its core is a legal question, which is whether the law was clearly established. Right. This court can decide that and should decide that as a matter of law. And I submit that it's clear in this case that the questions of liability and qualified immunity both rise or fall on the same factual basis. So, you know, for summary judgment purposes, it's clear that there are disputed questions of fact as to both issues. And in your view, is it established that a reckless mens rea would suffice for a detective? It's I don't think it's clear under under this court's precedence. And that's an issue that we argue to the district court. And it's actually not clear explicitly from the district court's opinion what standard of bad faith the district court was applying. District court cited to various cases, including those that talk about deliberate indifference or reckless disregard of the truth. And so implicitly adopted that standard. But in the 1983 evidence fabrication context, I don't think there's been a clear announcement of that. We've drawn from other precedents of this court which have used the recklessness or deliberate indifference standard to address similar questions. So is it your view that you've presented enough evidence to go to a jury on recklessness that suffices to make out to overcome summary judgment? Yes. And we submit that the record here also supports a finding of knowing fabrication of evidence. So under either standard, it's a question of fact, you know, at bottom, we're asking what was in the mind of this individual. And that's simply something that we can't do without a trial of the facts. So to the Monell claims. Yes. With regard to the Monell claims, I do believe that the court needs to address this question. Excuse me. Monell claims are against what? UNESCO and Union County. No, the Monell claim. There's an individual claim against UNESCO. Clearly, when you look at paragraph three of the complaint, you're suing UNESCO only in its individual capacity. Correct. For failure to supervise. And the claim against Union County is Monell. So what's the basis of the claim against UNESCO? Well, UNESCO acknowledges that he it was his responsibility to supervise Comiscus. And the record is clear that he conducted no supervision whatsoever of the way that Comiscus conducted polygraphs and created polygraph evidence. So the basis for the claim is what? Supervised reliability or what? Correct. Supervised reliability based on his deliberate indifference to Comiscus's fabrication of evidence. Which which overlaps to a large degree with the county's deliberate indifference or, as I've said, complete indifference. You know, the record in this case that we developed through the county have any policies or procedures that you've discovered so far in place with respect to how to conduct polygraphs? Nothing whatsoever. But that itself is a policy that that's a policy of indifference. That's that's a choice that they made to conduct no oversight, to do no quality control. They the prosecutor's office or I believe the county representative testified that they weren't even aware that the police department was conducting polygraph examinations. So this is this is significant evidence that's being used in criminal cases. I mean, this was the evidence that sent Emanuel Mervelous to prison and Union County paid no attention to how officers were creating this evidence. What science they were using, what training they received, whether there was any validity to it whatsoever. Have we said whether a deliberate indifference theory for supervisory liability is viable for failure to supervise, you know, supervise and train? I believe the standard is deliberate indifference for for a failure to supervise individual claim. And I in going over the briefs to prepare for the argument today, I realized that this is an issue we did not adequately address in our appeal. The district court dealt with the Monell claim, supervisory liability claim and state law claims in one section and basically swiped them away altogether, saying that erroneously saying that a Monell claim requires individual liability first, but not saying the same for a supervisory liability claim. And that's another problematic aspect of the opinion. You said what did you just say? Monell requires what kind of liability? The district court concluded erroneously that for there to be Monell liability, there must first be individual liability of Comiscus. Correct. Or of someone. And that's incorrect. Thank you. Thank you. Mr. Simmons, I would suggest maybe you and Mr. You have 10 minutes. I might suggest seven and a half apiece because I have a number of questions for Union County. Sure. Is that OK? That's fine. OK. Whenever you're ready. Good morning, Your Honor. Michael Simmons, Kaloji Simmons, on behalf of the estate of John Comiscus. Appellant's argument is that there were disputed issues of fact regarding my client's state of mind, which is an interesting argument, considering that he conceded on summary judgment in his brief that he didn't know if my client fabricated evidence or just exaggerated the results. He also conceded in his reply brief to this court that his expert did not opine on those issues and provided no evidence. The appellant in this case didn't. I mean, the problem you run into is that summary judgments normally disfavored when the critical issue is state of mind. Well, it still needs evidence. And as noted by the Halsey case, it's an unusual case where summary judgment won't be granted on a fabrication of evidence claim. It's a high bar. As the court noted, it's a notable bar, requires proof of ill will, requires some proof that the evidence was in fact fabricated. Or if the law were to be changed to say that recklessness could indicate a problem for Mr. Comiscus, that might be another another area one could pursue. Recklessness, if I could just clarify that question, Your Honor, are we talking about what the district court replied with reckless disregard to the truth, which requires some knowledge of the falsity? Are we talking just recklessness? Basically, I mean, you've got a bad set of facts where a person is convicted based almost solely on a polygraph, if not solely on a polygraph. It's overturned by the appellate court. It comes back and the jury is out in record time, 30 minutes, and he's acquitted. I mean, like, you know, it's unanimous. And so it doesn't look good. And it looks as if this is like Keystone Cops type of thing in connection with the polygraph. And so you can see why somebody wants to have for this time what's been lost in his life, this some type of remedy. Correct. So the facts, the facts aren't good for you. Judge, the facts of his case, which the 30 minute return was because the victim couldn't identify him at trial. That's why he came back so fast. Sorry. Could you say that again? Because the victim could not identify him at trial at the subsequent retrial. Yeah. So what has to happen here is not just that the results were false because, as Halsey indicated, can't just be disputed. In the first trial, does the victim identify him? Ah, the first trial. That was the problem with the appellate division had because in the first trial, he points to somebody in the audience as the guy. Oh, boy. And then the prosecutor rehabilitated him with a picture because the facts were that he followed these two individuals and then pointed them out to the police officers, never losing sight. So no mistrial was requested. It was a big mistake. There should have been a mistrial requested. And personally, reading between the lines, Your Honor, my personal opinion, when the appellate division got this, they could not overturn based on the jury's finding, but they could pin it on Mr. Kavinskas. I want to go back to one of the very first things you said, something about how the lieutenant may have exaggerated the result of the polygraph. In your view, why would that not potentially be enough to go to a jury on fabrication of evidence? Well, there has to be evidence that he exaggerated the results. And all we have is their appellant's expert just disagrees with the results. Now, remember, one thing that was ignored by the district court and assiduously ignored by the appellant is that my client didn't just use the Arthur method. He also had a computerized system, which had its own built-in algorithm, which recorded the results, which you can run the program, which also came back as deception indicated. I don't have the record here, but I thought I recalled that there was a little more than that, that the results, however he reached them, came back negative, but he reported them positive. In this case, no, absolutely not. My client indicated he had deception indicated. Deception indicated after he answered a question one way, and he stopped the test and says, don't you really think you're not completely sure on who did this? And so then the person answered the question another way. I mean, this is like a story that's got to be picked up by Dateline or something. I asked the appellant's expert that question specifically, Judge, and it's cited in my brief. I asked him what effect did that question and that sequence have on the results. And the quote from the appellant's expert is, I don't know. We can't presume that that question had any impact at all on the results obtained both by my client through his review with the author method, as well as the computer results that he relied upon. Now, we asked the appellant about the computer. I asked him, what do you know about it? I know nothing. I can't make any comment. How are we getting to bad faith if we can't even prove that that method he relied upon to justify his results was somehow fabricated? He didn't fabricate. There's no allegation. He somehow went into the algorithm. I want to talk about fabrication for a minute. I think most of the fabrication cases deal with ballistics or chemists or things. Do we have any other cases where in the polygraph setting there's a fabrication? I think the closest one was the one discussed extensively by the district court, the Deskibit case, which was more of a coercion, false confession case. It had nothing really to do with the polygraph results per se. I have racked my brain in this case, Your Honor, to come up with a theoretical situation where a polygraph examiner could falsify evidence. And other than looking at the polygraph results, getting a result that they were truthful and saying, no, forget it, I'm saying he's deceptive, that's fabrication. I'm trying to come up with something else in this regard, because remember, he used his, all we have is a disagreement. And Hans does not testify at all, one bit, to what, how my client's results were somehow fabricated. He says very specifically that it's due to the Arthur method. Can you imagine a case where that, what you call a mere disagreement, is so outrageous that it amounts to some kind of fabrication? If the evidence indicates ill will, bad faith, reckless disregard for the truth, a conscious wrongdoing, for example, skipping a step purposely, and we can infer that they skipped this step in order to get to a result. I think the movie Jaws, was it a shark attack? No, it was a boating accident. That's fabrication of evidence. That's ill will that's going in and changing it. We have my client who did a review according to his changes, which the appellant's expert says is a bad method. It's bad, I don't like it. So you're saying they need a bigger boat? They need a bigger boat. But what did my client, when it comes down, I'm sorry. If a polygraph examiner were to come up with an entirely novel method, created, no one else used, just made it up on its own without any scientific basis, and then presented those evidence as scientific results at a trial, would that be bad faith? It could be, Judge. It's difficult for me to take that hypothetical. We have to keep in mind that no polygraph method is admissible in this circuit, admissible in this district. But it was in New Jersey at the time of Mr. Merpolis' trial. And certainly in the state of New Jersey. They all know this. They all know that this is not admissible, has not been found to be scientifically reliable. They do believe it, the people who teach this, and the experts, both experts in this case, firmly believe in their science. But they disagree as to who's at best. Are you saying that it's not admissible now? But it was admitted and admissible at the time of the trial. It was admissible under the stipulation that the appellant voluntarily signed that had no involvement with my client. That's why it was admissible. And the state of New Jersey has changed that law since then. It requires not only a stipulation, you have to show scientific reliability. They were tired of dealing with it. Thank you, Judge. Thank you, Judge. Good morning, may it please the Court. I'm Michelle Mouftah. I'm the first Deputy County Counsel for Union County. I represent Chief Daniel Vinesca, as well as the County of Union. Just at the outset, you were arguing that Mr. Comiscus, or Lieutenant Comiscus, was, the polygraph wasn't your responsibility because it was not the responsibility of the county, but wasn't this person an employee of the police department? Yes, Your Honor, at the time he was a lieutenant, Your Honor. And isn't the gathering of evidence typically performed by police officers? Well, this particular process was done under the shared services. It was done for the Union County prosecutors in order to further potential criminal prosecution. I mean, Union County, I can't discern any way that Lieutenant Comiscus was not the responsibility of Union County. So I'm missing how it's somebody else's responsibility with respect to how Comiscus conducted a polygraph test. And I would say Mr. Comiscus is a county employee. This program relative to the polygraph was done as a shared services with the Union County prosecutor's office. Speaking to... So why wasn't he an agent of the county? He's an employee of the county. That's undisputed. I'm not disputing that. Let's go to the Monell claim then. The judge held that the Monell claim was independent of the claim against Comiscus because having found him not acting in bad faith, therefore there could not be a Monell claim against Union County. But why aren't they completely independent? Comiscus could act in good faith, but Union County, if you had no policy, no procedures, no training, why could we not find that that was deliberately indifferent to the way in which polygraphs are conducted? Because what happened here affected someone's life and messed it up for several years until things got righted. I'm going to address that in two folds. I believe the underlying case law relative to the Third Circuit, pretty much in cases that have been recently affirmed, states that if there's no individual liability, there could be no Monell claim against the entity. But relative to... I believe that's City of Johnson versus... I mean, Johnson versus City of Philadelphia. But I do want to address... But the cases that were cited either by you or by the district judge here depend on proof of a Monell state. In this matter, I think I don't want the record to be misconstrued relative to the county, relative to power, policy and custom. There is no written policy on it. But when you look at the record, it is clear that when you look at Lieutenant Comiscus, he was trained. He was trained angrily. We never denied any training. He was actually admitted to be an expert in numerous cases. But isn't it typical that police departments have policies and procedures with respect to the conducting of lie detector tests? Well, Chief Vineska had a general understanding relative to the polygraph. My question is, doesn't the police department normally have policies and procedures as to how its employees should conduct lie detector tests? I don't know the answer to that particular question. What I can tell you here at the county is Comiscus is essentially an expert relative to the polygraph. He actually had... But who trained him? I mean, who trained him? He was trained by outside sources. Counsel, in Fagan v. City of Vineland in 1994, this court held that a municipality can be liable for constitutional tort even if no individual employee violated the Constitution. And there have been a number of cases interpreting Fagan since then, sometimes limiting it in different ways. But there is a well-established precedent that a municipality can be liable even if Detective Comiscus were not. So why would your situation not fall within the Fagan realm? Are you familiar with Fagan? It was a high-speed police chase. Yes. The facts from this case, I still think we still gain some rejudgment relative to the county in this regard. And I might have stated it before, Mr. Comiscus was trained. He had over 600 polygraphs. The record shows that there were no complaints. There's a self-check with the Union County Prosecutor's Office. There's nothing in the record that says that he was incredible or he was coaxing. We don't know if he used the Arthur method for all 600 polygraphs. I mean, there's so much that we don't know that needs to be ferreted out at trial. Judge, what we do know is that he was absolutely trained. He was actually accepted to be an expert in numerous cases. And in order to be an expert, that delves into relative to your education as well as experience. But do you agree that the district court needs to conduct a Manel analysis independent from the individual claim against Lieutenant Comiscus? Well, I disagree. I believe that the fact that there is no bad faith or no evidence of bad faith that was presented relative to Comiscus relates to the county as well. There's no underlying evidence within this case that shows that there was bad faith or willful conduct by Comiscus. Who's the lead expert for the county? To me, it's debatable whether Comiscus was truly an expert. Has he been qualified as an expert in court proceedings in the past? Correct, he has. And it's reflected in the record, there's been numerous times that he's been accepted as an expert. Now, Dr. Hunts claimed that the Arthur method was not recognized as valid by the polygraph community and that Comiscus employed highly flawed techniques and he did not score examinations reliably. I don't know how that makes somebody an expert. Well, I think you go with the baseline that he's conducted over 600 tests and that's in the record. The fact that he testified numerous times relative to the polygraph, that's in the record as well. And the fact that he's been trained on a particular method and has used it numerous times, that's an expert. You know, when you think about a police force, you think about, in this case, you have the chief and the chief has general knowledge of everything that's going on within their police force. In this particular situation, he has a supervisor who is an expert in a particular area, who goes to the annual training, who works hand-in-hand with the prosecutor's office. So it's my understanding. Who is the supervisor? Comiscus, a supervisor within the organization. Anything further you want to add? Thank you. Is there much you wish to add? No, Your Honor. I would like to address something that counsel said because he's mistaken, which is his statement that the record showed there were no complaints against Comiscus. And that's important because there were. There were other cases where convictions obtained with his polygraph evidence were overturned. And to answer the Court's question about why polygraph evidence was admissible in New Jersey at the time, the change in the law actually happened through two cases. One was Emanuel Mervelous' case and the other was a case called State v. AO in which Comiscus was also the polygraph examiner. Were there cases overturned because of Comiscus' methodology in administering the polygraph? There were issues raised in AO about his methodology. The issue and his methodology was criticized in that case. In Mervelous' case, the issue was regardless of the stipulation that you have, the trial court still has an enduring responsibility to make sure that evidence is reliable so you can't just stipulate this evidence in. But yes, to answer Your Honor's question. Was there any cases overturned? The question was were there any cases overturned? Yes. State v. AO is one such case. And in the record, and we're happy to point Your Honors to the specifics, in Comiscus' deposition, he's asked about a number of cases where his convictions were overturned and where questions were raised about his methodology. And one of the questions was did anybody ever counsel you or talk to you or address those issues at all? The answer was invariably no. Your Honor, Judge Freeman's question about... Let me just ask this. If the county hires what it understands to be an expert to do these polygraph tests that most of us non-experts don't know anything about, how to administer them, is it unreasonable for the county then to, in its supervisory role, to defer to that expert's judgment and practice in being, you know, he's the polygraph guy. I'm, let's say, Vaniska. I don't know how to do polygraphs. How would I supervise Vaniska? He's the expert. I'm not. What should the county have done to supervise this expert? Well, number one, to determine whether he is an expert, to determine whether the training that he self-selected was appropriate training. Was it an accredited school? No. Was it using valid science? No. But the county didn't even conduct that inquiry. It simply left the game in free reign. So the county's thinking to itself, look, he's been qualified numerous times as an expert. These courts know. You know, how are we going to second guess his expertise when he's getting qualified by courts? Well, his expertise was stipulated to. Part of the stipulation that the state required the defendant to agree to said, we agree that this person is an expert and we won't challenge their qualifications. But if you're the county, why isn't that sufficient? Well, the county still had a duty to determine whether false evidence is being produced by supposed scientists who are in its employ, whether that be DNA evidence, whether that be ballistic evidence or polygraph evidence. There has to be some, some, any measure by the county to determine that this science is reliable and it's not producing false evidence. Thank you.